UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLEN DELOACH,

       Plaintiff,                    Case No. 09-14087
                                               HON. GEORGE CARAM STEEH
vs.

THE GREAT ATLANTIC & PACIFIC
TEA COMPANY LTD PLAN ("BENEFLEX")
and CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,

       Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT
TO AFFIRM DECISION TO DISCONTINUE LONG TERM DISABILITY BENEFITS
(DOC. # 51) AND GRANTING PLAINTIFF'S MOTION TO REVERSE DEFENDANTS'
DECISION TO TERMINATE LONG-TERM DISABILITY BENEFITS (DOC. #52)

INTRODUCTION

       This is an ERISA long-term disability (LTD) benefits case, originally filed in 2009. At a hearing on the parties' cross motions for summary judgment in 2010, defendant The Great Atlantic and Pacific Tea Company LTD Plan informed the court it would agree to pay plaintiff certain benefits. Accordingly, in July 2010, the court entered an order granting plaintiff's motion for summary judgment in part, denying defendant's motion for summary judgment and remanding the case to supplement the administrative record. Under the terms of that order, defendant was required to pay plaintiff the remainder of two years of long term disability benefits, which the order indicated corresponded to the period in which plaintiff was disabled from employment in his "own occupation." As to payment of further benefits, the matter was remanded for a

determination of whether plaintiff was eligible "for long term disability benefits under the 'any occupation' disability standard." (See doc. # 27.) The case was then administratively closed and stayed.

On remand, defendants made the determination that plaintiff was not entitled to further benefits. As contemplated by the July 2010 order, plaintiff then filed a motion to reopen the case and file an amended complaint, which was granted by the court in January 2012 . Now before the court are cross-motions filed by the parties. Plaintiff filed a motion to reverse the defendants' decision on continuing payment of LTD benefits past an initial two years. Similarly, defendants filed a motion for judgment to affirm the decision to terminate LTD benefits. The court held oral argument on the motion on October 31, 2012. For the reasons that follow, the court will grant plaintiff's motion and deny that made by defendants.

## BACKGROUND

Plaintiff Glen Deloach, as a Farmer Jack warehouse supervisor from 2002-06, was covered by benefits sponsored by the Great Atlantic and Pacific Tea Company, Inc. (A & P). While with Farmer Jack, Deloach was covered by an A & P LTD benefits policy issued by the Connecticut General Life Insurance Company (Cigna).

Deloach, who was born in May 1965, began experiencing health issues in 2005, which worsened in late 2005-early 2006. Deloach initially complained of "lightheaded spells and palpitations." Following a "tilt table test" performed in February 2005, Deloach's cardiologist Dr. O'Connor diagnosed "fairly severe vasovagal syndrome on Tilt table...with no evidence of [ventricular issues] by electrophysiologic testing." Deloach was ultimately diagnosed with autonomic dysfunction, characterized as

"postural orthostatic tachycardia syndrome (POTS) and/or neurocardiogenic syncope (NCS). Deloach's last day of work was March 4, 2006.[1] Around that time, Deloach began treating with a specialist named Dr. Blair Grubb in the Cardiac Electrophysiology and Autonomic Function Clinic at the University of Toledo's Medical Center. Dr. Grubb's co-worker, Nurse Practitioner Karabin, often prepared reports concerning Deloach's visits. Dr. Grubb and Nurse Karabin periodically sent information concerning Deloach's condition to his treating physician, Dr. Roecker.

On August 4, 2006, Deloach applied for the Cigna LTD benefits. Cigna requested medical information and requested that Deloach apply for Social Security Disability (SSD) benefits. Although the application was initially denied, Deloach successfully appealed the denial of SSD benefits and receives those benefits to date. Cigna then approved Deloach's claim for LTD benefits in October 2006, noting that it would periodically confirm his "continuing disability status."

Cigna paid long term disability benefits to Deloach for approximately eight months, terminating payments effective June 13, 2007. The reason stated for the termination was that medical information requested from Dr. Grubb was not received. On review, records prepared by Dr. Roecker and Nurse Karabin were considered, and Cigna upheld its denial in mid-2008. Deloach requested another review of his records at the end of 2008, referencing a February 2008 letter from Nurse Karabin to Cigna. In March 2009, based on a "full file review" by Cigna physician Dr. John Mendez, Cigna again upheld the denial of benefits. Dr. Mendez stated, in part:

---

[1] Additional medical records and reports from that time period to the present are discussed as necessary in the analysis section, below.

> Based on the provided records, with a reasonable degree of medical certainty, the original assessment remains unchanged. This is because there remains no time-concurrent documentation of significant measured physical limitations to support the extension of restrictions from regular work duties beyond 6/13/07.

Following this determination, Deloach filed the instant action. As noted above, pending cross motions for judgment filed in 2010, A&P agreed to pay Deloach the balance of the LTD benefits remaining under a two year "own occupation" standard referenced in the summary plan description. The court then entered an order reflecting that agreement and remanding the matter for a determination of Deloach's eligibility for benefits beyond the initial two years, and he submitted his claim for benefits after the remand on December 10, 2010. Dr. Sushil Sethi, retained by defendants, performed an independent medical exam of Deloach. Based largely on Dr. Sethi's exam, defendants denied Deloach's claim. Deloach's appeal was unsuccessful. This matter was then reopened upon motion filed by Deloach, and now before the court are the parties' cross motions concerning the denial of his claim for continuing benefits.

## STANDARD OF REVIEW

"The general rule is that this Court reviews a plan administrator's denial of ERISA benefits de novo." Moon v. Unum Provident Corp., 405 F.3d 373, 378 (6th Cir. 2005). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." Id.

Deloach contends that this court should review the subject decision to terminate benefits under a de novo standard of review. Deloach quotes from the A & P plan document, which provides that the *plan administrator* is the individual who is "Vice

-4-

President - Benefits and HRIS (or the equivalent)." That document further provides that the *claims administrator* for Long Term Disability is "CIGNA Group Insurance," and that the Appeals Authority is the "A&P Benefits Committee." (See A.R. at 1988-2015 (emphasis added).) Following these provisions, the plan document states:

> The *plan administrator and appeals authority* shall have and shall exercise *complete discretionary authority* to construe, interpret and apply all of the terms of the plan, including all matters relating to eligibility for benefits....

(A.R. at 2016 (emphasis added).) Deloach emphasizes that the determinations in his case were made by neither the plan administrator nor the appeals authority, but by Cigna. He was instructed to file appeals with the "Connecticut General Life Insurance Company," and his final appeal was denied by Gary Person of Cigna Group Insurance. Deloach demonstrates that the A&P benefits department was not involved in these decisions.

Although defendants make a creative argument that the language of the plan shows that Cigna was the "designated Claims Administrator for Long Term Disability benefits under the Plan," and thus transferred the discretionary authority initially reserved to the plan administrator to Cigna, the court finds no real support for this position. Defendants do not point to any language from which the court may infer the transfer of discretion to Cigna. As Deloach points out, the Sixth Circuit requires that the grant of discretion be "clear" in order to invoke the arbitrary and capricious standard of review. Wulf v. Quantum Chemical Corp., 26 F.3d 1368, 1373 (6th Cir. 1994). For this reason, the court finds that the de novo standard of review applies to this claim.

ANALYSIS

The court must first address a threshold issue prior to addressing Deloach's eligibility for benefits. Deloach argues that the two level disability definition (disability from performing 'own occupation" for two years, followed by "any occupation") contained in the summary plan description, where no such distinction is made in the plan document itself, does not apply to his claim for benefits.

Defendants assert that the summary plan description is not at odds with the plan document itself. The language in the plan document reads as follows:

> LTD insurance benefits begin after you have been totally disabled for 180 consecutive days. Your disability must be certified by a physician and approved by the claims administrator before benefits are paid under this feature. Generally benefits will continue up to age 65, provided you remain totally disabled. The claims administrator may require proof of your continued disability from time to time.

(A.R. at 2006.) Defendants contend that the language "total disability" is applicable to both levels of disability in the summary plan document, requiring first that the claimant is "totally disabled" from performing his or her own occupation, and next requiring that the claimant is "totally disabled" from performing any job for which he or she is qualified, and in this way does not present any conflict.

The court finds that this issue does not impact Deloach's claim for continuing benefits. As defendants argue, if in fact the plan itself should have supplanted the summary plan document, the use (for the initial two years of the claim) of the "own occupation" standard, to which the parties agreed at an earlier point in this litigation,

was beneficial to Deloach. Deloach has received those benefits. The question at this juncture is simply whether or not Deloach is totally disabled from employment.[2]

Defendants rely on Dr. Sethi's independent medical exam in maintaining that the denial of LTD benefits for Deloach was warranted.[3] Defendants generally assert that Deloach has submitted only summaries of his condition "as diagnosed in 2006," and that these records do not impact Dr. Sethi's reports. Furthermore, defendants argue that there has been no information provided by Deloach's health care providers concerning his ability to perform sedentary employment as opposed to employment that requires prolonged periods of standing.

Deloach asserts that "there is no dispute that Mr. Deloach was properly diagnosed with severe autonomic dysfunction characterized as Postural Orthostatic Tachycardia syndrome (POTS)/Neurocardiogenic Syncope (NCS)," and that no health care provider is in disagreement with this diagnosis. Deloach then lists symptoms of the health condition, and states that "there is no dispute that Mr. Deloach experiences, on a regular basis most, if not all, of these problems. The administrative record is replete with references to exercise intolerance, extreme fatigue, syncope (fainting), near syncope, and shortness of breath." Deloach contends these symptoms prevent him from performing any job whatsoever.

---

[2]The court notes that Deloach more than once refers to the duties he was required to fulfill in his job as warehouse manager in arguing that he is entitled to LTD benefits. However, even if the court were to find that the summary plan description modified the plan document itself, Deloach would not be entitled to benefits solely upon an evaluation of whether he could perform the duties of warehouse manager.

[3]Deloach, on the other hand, objects to an evaluation of his continued ability to work by a "hired gun" who spends only a small fraction of his time treating patients.

The parties also engage in a dispute over the availability and necessity of objective measures of Deloach's medical condition. Defendants cite to the report of Dr. Sethi, which noted that Dr. Grubb's diagnosis and recommendation did "not describe any physical findings to show such a blanket statement as inability to maintain any type of gainful employment." (A.R. at 1680.) Furthermore, defendants note that in Deloach's appeal of the 2011 denial of benefits, no updated medical information was given, and only identical, undated statements were provided by Dr. Grubb and Nurse Karabin. These documents addressed Deloach's "inability to tolerate prolonged standing," but did not address his ability to engage in sedentary employment. Following this, Deloach sent in records of three office visits with Nurse Karabin. Predictably, the parties dispute the characterization of these records.

Defendants attack the Karabin records by picking out sentences which stated that (1) as of an October 2010 visit, Deloach had not been to the clinic in over one year; (2) that as of August 2011, Deloach had not experienced a syncope episode in over one year; and (3) that Karabin had encouraged Deloach to exercise and did not consider him to be at risk for a fall. Plaintiffs place these statements in context, pointing out that while Karabin did have some positive things to say, she also reported that Deloach "continu[ed] to suffer from episodes of orthostatic intolerance including symptoms of extreme fatigue, shortness of breath, drenching sweats, and diaphoresis, tremulousness, and severe chest pain." Furthermore, the record demonstrates that Deloach, between 2008 and the time of those reports, had experienced near syncope on multiple occasions and at least two episodes of syncope.

Defendants also argue that Deloach did not provide the plan administrator with any objective means of measuring his condition. However, the plan itself does not require test results for a disability determination, and certain medical conditions are simply not demonstrable through test results. As Deloach argues, it is difficult to understand how an inability to tolerate prolonged standing; chronic fatigue; headaches; heat and exercise intolerance; shortness of breath; anxiety; chest pain; and syncope or near-syncope are supposed to be measured by objective tests.

Deloach also makes a persuasive argument concerning the determinations made in the proceedings leading to Deloach's award of Social Security Disability benefits. Deloach cites Delisle v. Sun Life Assurance Co. of Canada, 558 F.3d 440 (6th Cir. 2009) for the proposition that while a decision by the Social Security Agency to grant benefits is not determinative in an ERISA case, it is "far from meaningless." Id. at 446 (quoting Calvert, 409 F.3d at 2940). Here, defendants argue only that the Social Security decision was made years prior to their decision on remand, and again that Deloach's "treating physicians failed to provide any objective medical information to challenge the independent medical examiner's conclusion that [Deloach] was capable of performing sedentary employment." (Defendants' Motion for Judgment at 21.) It does not appear to the court that Mr. Deloach's medical condition has materially changed since the SSA's decision. Furthermore, as set forth above, his condition does not appear to be one which can be evaluated using objective tests. Defendants have not provided any real reasoning as to why their determination should be at odds with that of the SSA.

CONCLUSION

This case is one that turns on the applicable standard of review. While it appears to the court that an examination of the administrator's actions for arbitrary and capricious decision making would result in a finding for defendants, under the <u>de novo</u> standard of review, the court is convinced that its weighing of the evidence requires reversal of Cigna's decision to terminate benefits. Accordingly, defendants' motion for judgment is hereby DENIED, and that of plaintiff is GRANTED. Defendants are ordered to promptly reinstate benefits retroactive to the date of termination.

**IT IS SO ORDERED**.

Dated: January 30, 2013

                                s/George Caram Steeh
                                GEORGE CARAM STEEH
                                UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 30, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk